# In the United States Court of Federal Claims

No. 18-705C

(Filed Under Seal: August 3, 2018)

(Reissued: August 10, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **DZSP 21, LLC,** | ) | Post-award bid protest; change in |
| | ) | requirements for the procurement; |
| **Plaintiff,** | ) | application of FAR § 15.206(a); |
| | ) | evaluation of past performance and |
| **v.** | ) | technical factors, including staffing and |
| | ) | technical approach; equitable relief |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **FLUOR FEDERAL SOLUTIONS, LLC,** | ) | |
| | ) | |
| **Defendant-Intervenor.** | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Anuj Vohra, Crowell & Moring, LLP, Washington, D.C., for plaintiff. With him on the briefs were Hart W. Wood, Crowell & Moring, LLP, Washington, D.C., Jason A. Carey, Nooree Lee, John R. Sorrenti, and Alexis Dyschkant, Covington & Burling, LLP, Washington, D.C.

Veronica N. Onyema, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C. Of counsel were Richard J. Huber and Patricia J. Battin, Department of the Navy.

Richard B. O'Keeffe, Jr., Wiley Rein, LLP, Washington, D.C., for defendant-intervenor. With him on the briefs were Samatha S. Lee, George E. Petel, and William A. Roberts, III, Wiley Rein, LLP, Washington, D.C..

**OPINION AND ORDER**[1]

---

[1] Because of the protective order entered in this case, this opinion was filed initially under seal. The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information. The resulting redactions are shown by brackets enclosing asterisks, *e.g.* "[\*\*\*]."

LETTOW, Senior Judge.

Pending before the court is the sixth protest filed regarding an award in the procurement at issue. Four of the prior protests were brought before the Government Accountability Office ("GAO"), and this is the second protest to come before the court.

Previously, slightly over four months ago, on March, 22, 2018, this court issued its decision in a protest of an award in the procurement. *See DZSP 21, LLC v. United States*, 137 Fed. Cl. 38 (2018). In that opinion, the court concluded that the Navy's contractual award to defendant-intervenor, Fluor Federal Solutions, LLC, for base operation services for military installations in Guam was arbitrary and capricious and enjoined the Navy to perform a new evaluation of the proposals of both Fluor and plaintiff, DZSP 21, LLC,[2] or to conduct an entirely new solicitation. Just 22 days later, on April 13, 2018, the Navy issued a new decision upon reevaluation, once again awarding the contract to Fluor.

DZSP again challenges the Navy's award as arbitrary and capricious and in violation of the law. As such, DZSP has moved for judgment on the administrative record, seeking both a declaratory judgment and permanent injunction setting aside the contractual award to Fluor and requiring the Navy to issue a new, updated solicitation. The government and Fluor have opposed that motion and have filed cross-motions for judgment on the administrative record.

## **FACTS**[3]

The Navy issued the solicitation underlying this protest in October 2013, solicitation No. N62742-13-R-1150. *DZSP 21*, 137 Fed. Cl. at 40. The solicitation is thus nearly five years old. Proceedings challenging awards under the solicitation have been undertaken at regular intervals. Based upon the protests filed before the GAO, the Navy took corrective action on three separate

---

[2]"DZSP is a corporation based in Guam [that] began offering base operation services for the military installations in Guam in 2005." *DZSP 21*, 137 Fed. Cl. at 41. DZSP is owned by Pacific Architects and Engineers Incorporated ("PAE"), which owns other entities that provide services to governmental installations worldwide. *See* Pl.'s Reply . . . and Response . . . ("Pl.'s Reply") at 21, ECF No. 42.

Fluor is a subsidiary of Fluor Enterprises, Inc. and is based in Greenville, South Carolina. AR 240-29789 to -29790. Fluor owns other entities that provide services to the government worldwide. *Id*.

[3]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurement filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC"). *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (explaining that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court"). Extensive factual findings will also be drawn from this court's opinion in *DZSP 21*, as the same administrative record, albeit with added elements, applies in and to this post-award protest.

occasions before protests were filed in this court. *See id.* DZSP has been performing the base operation services on Guam since 2005, operating under bridge contracts since 2014 while the protests related to awards under the 2013 solicitation have been litigated. *See DZSP 21*, 137 Fed. Cl. at 40, 43 & nn.4-6.

"The solicitation offered a cost-plus multi-year contract" "for base service operations for the Joint Region Marianas, comprising various military installations in Guam." *DZSP 21*, 137 Fed. Cl. at 40-41. Bidders demonstrated their ability to provide "integrated base operations services" by submitting proposals that included both technical and cost elements. *Id.* at 41; *see also* AR 8a-340.[4] The Navy evaluated those proposals to determine which provided the best value to the government, "considering cost and five non-cost factors, designated as factors A through E." *DZSP 21*, 137 Fed. Cl. at 41. "Cost accounted for roughly 50% of the evaluation with the confidence assessment under Factor A, [past performance,] accounting for approximately another 25% and with the technical factors, Factors B, C, D, and E, collectively accounting for the remaining 25%." *Id.* (citing AR 8a-343). After evaluating the technical factors, the Navy assigned an adjectival rating of outstanding, good, acceptable, marginal, or unacceptable and, for Factor A, assigned a confidence assessment stated in terms of an adjectival rating of substantial confidence, satisfactory confidence, limited confidence, no confidence, or unknown confidence. *Id.* Cost proposals, on the other hand, were not assigned an adjectival rating but were evaluated for completeness, cost reasonableness, and cost realism. *Id.* (citing AR 8a-343).

Back in 2014, "[p]ursuant to the initial evaluation of submitted proposals, both DZSP and Fluor received an overall technical rating of 'outstanding' and a confidence assessment rating of 'substantial confidence.'" *DZSP 21*, 137 Fed. Cl. at 41 (citing AR 8a-5405). Because DZSP's proposal was the less costly of the two, the Navy determined that DZSP provided the best value to the government, and awarded it the contract. *Id.* Fluor filed a protest that the GAO sustained. *Id.* This was the first of seriatim protests filed with GAO by Fluor; after each, the Navy took corrective action but again awarded the contract to DZSP. *See id.* at 41-42. This pattern continued through 2016, when, in July, the Navy completed another round of both technical and cost evaluations of DZSP's and Fluor's proposals. *See id.* at 42. The Navy again rated both proposals as technically outstanding and evoking "substantial confidence." *Id.* Although the gap in cost between the two proposals had closed, with DZSP holding a $2.6 million advantage, the Navy once again determined that DZSP provided the best value to the government and awarded it the contract. *Id.*[5] In October, Fluor again filed a GAO protest, which was again sustained. *Id.* at 42-43.

---

[4]Citations to the administrative record refer to the record as filed on May 29, 2018. The record is divided into tabs and paginated sequentially. In citing to the record, the court will first designate the tab, followed by the page number. For example, AR 8a-340 refers to tab 8a, page 340 of the administrative record.

[5]The total value of the contract has approximated $500,000,000.00 throughout the proceedings on the procurement, so the difference in price between the various offers of DZSP and Fluor has been relatively small as a percentage of the total.

After this protest, when the Navy took corrective action in 2017, it reversed itself, awarding the contract to Fluor. *See DZSP 21*, 137 Fed. Cl. at 43. The cost evaluation performed in 2017 stated that the Navy no longer considered DZSP's approach to "maintaining exempt labor rates" to be "reasonable and realistic." *Id.* (citing AR 192-26972). In support of this reversal, the cost evaluation team and Source Selection Authority ("SSA") considered data from the current and past bridge contracts under which DZSP had been operating while the procurement process was pending. *See id.* The Navy also changed its views on the reasonableness of Fluor's proposal and made upward adjustments to both cost proposals. *Id.* at 43-44. "With these changes to the proposals, Fluor's and DZSP's non-cost ratings remained unchanged, but Fluor now had the less costly proposal" with a $[***] million advantage. *Id.* at 44; *see also* AR 193-26986. With the cost advantage, Fluor was determined to provide the best value to the government and was awarded the contract. *See DZSP 21*, 137 Fed. Cl. at 44.

DZSP filed a protest with GAO, but it was denied and dismissed. *See DZSP 21*, 137 Fed. Cl. at 44. DZSP filed a complaint in this court in January 2018 and prevailed. *Id.* at 44, 50. The court determined that various aspects of the Navy's award were arbitrary and capricious and enjoined the Navy "to perform a new evaluation of DZSP's and Fluor's proposals or to conduct an entirely new solicitation, whichever it cho[se]." *Id.* at 46-50. The court concluded that the Navy had erroneously assigned a strength to Fluor under Factor C, staffing and resources, where it may have been required to assess a weakness, *id.* at 46-47, and had arbitrarily made an upward adjustment to DZSP's cost estimate, *id.* at 47-48. The court took particular exception to the Navy's "selective[] use [of] the bridge contracts." *Id.* at 48. It was unreasonable, the court held, for the Navy to consider the bridge contracts only as to cost, while ignoring other aspects that were relevant to a full evaluation of Fluor's and DZSP's proposals, especially those concerning staffing and contractual risk of satisfactory performance. *See id.* at 48-49 (noting the Navy's failure to consider the "increased need for exempt employees" under the bridge contracts and to apply those considerations and their implications to both Fluor and DZSP). In conjunction with these rulings, the court concluded that the Navy was not required to amend its 2013 solicitation, notwithstanding the fact that "military assets based on Guam by the Navy, Marine Corps, and Air Force ha[d] very significantly expanded over recent years," *id.* at 46, increasing requirements for contractual operational services by large amounts, *id.* at 45. The court accorded "great deference to the professional judgment of military authorities" in that regard. *Id.* (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quotation marks omitted).

After this court's decision, the Navy declined to conduct a new solicitation. It determined that despite "the lengthy period that ha[d] passed since th[e] solicitation was originally issued as well as changes that ha[d] occurred in the requirements that were originally identified, . . . further reevaluation [was] most appropriate." AR 240-29775. The Navy also decided against "reconven[ing] the . . . cost evaluation and technical teams." AR 240-29776. Just 22 days after this court's decision, the Navy reissued its award decision, again awarding the contract to Fluor. *See* AR 240-29778, -29800 to -29801.

The Navy's evaluation in 2018 was undertaken by the SSA, the Vice Commander of the Naval Facilities Engineering Command Pacific, based in Hawaii. *See* AR 240-29776. The record of her evaluation consists solely of a new Source Selection Decision Document. *See generally* AR Tab 240. In it, the SSA removed the strength assessed to Fluor under Factor C, staffing and resources. AR 240-29794. She also readjusted DZSP's cost estimate, returning it to

its 2016 level, and increased Fluor's cost estimate "to account for the [delayed] start date." AR 240-29777. But in making these cost adjustments, the SSA did not assess the relevant portions of the bridge contracts that she had previously ignored; notably, she decided to disregard the bridge contracts in their entirety. *See, e.g.*, AR 240-29779 ("I did not consider . . . the Guam BOS bridge contracts."). After these cost adjustments, DZSP had a $[***] million cost advantage over Fluor, [***]. *Compare* AR 240-29777, *with* AR 108-14029, *and* 110-14056. The basic non-cost factor ratings remained unchanged from the 2016 evaluation, *compare* AR 240-29777, *with* AR 108-14029, although the SSA did adjust DZSP's risk under Factor D, technical approach, from "low" to "low to moderate," *Compare* AR 240-29786, *with* AR 193-26996.

DZSP filed a bid protest in this court on May 18, 2018, *see generally* Compl., and filed an amended complaint on June 12, 2018, seeking declaratory and injunctive relief, *see generally* Am. Compl., ECF No. 36. DZSP claims that the Navy's reevaluation was arbitrary and capricious and in violation of law on several grounds. Am. Compl. at 34-43. Among other things, it argues that the Navy's reevaluation was unreasonable for failing to consider "the current circumstances in Guam" by not taking into account the significant increase in operational requirements at Guam since 2013 and the bridge contracts, and for not following its 2016 award decision when the non-cost factor ratings have remained unchanged and DZSP's cost advantage [***]. *See* Am. Compl. at 34-35, 37-39.

Pending before the court is DZSP's motion for judgment on the administrative record, *see generally* Pl.'s Mot. for Judgment on the Administrative Record ("Pl.'s Mot."), ECF No. 34, and the government's and Fluor's cross-motions for judgment on the administrative record, *see generally* Def.'s Mot. for Judgment on the Administrative Record and Opp'n to Pl.'s Cross-Mot. for Judgment on the Administrative Record ("Def.'s Cross-Mot."), ECF No. 39; [Def.-Intervenor's] Cross-Mot. for Judgment on the Administrative Record and Opp'n to [Pl.'s] Mot. for Judgment on the Administrative Record ("Def.-Intervenor's Cross-Mot."), ECF No. 40. All issues have been fully briefed and argued and are now ready for disposition.

## STANDARDS FOR DECISION

Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, governs the court's review of a challenge to an agency's contract award, *see* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, courts may set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004). The court may overturn an agency decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). And, because "[c]ontracting [o]fficers are entitled to exercise discretion upon a broad range of issues . . . , procurement decisions are subject to a highly deferential rational basis review." *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (internal citations and quotation marks omitted). Accordingly, "the court must sustain an agency action unless the

action does not evince rational reasoning and consideration of relevant factors." *Id.* (internal quotation marks and brackets omitted); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("[U]nder th[e arbitrary and capricious] standard, a reviewing court may not set aside an agency rule that is rational[ and] based on consideration of the relevant factors . . . .").

## ANALYSIS

DZSP's first challenge to the Navy's contract award to Fluor rests on the contention that the Navy has changed its requirements since the solicitation was issued nearly five years ago and thus is required by Federal Acquisition Regulations ("FAR"), specifically 48 C.F.R. § 15.206(a), to issue a new, amended solicitation. *See* Pl.'s Mot. at 16-20; *see also id.* at 20-24. In other respects, DZSP asserts that the Navy failed to rationally explain its departure from its 2016 award decision, *see id.* at 33-38, that the Navy improperly evaluated Fluor's proposal by erring in its assessment of past performance proffers and by failing to consider the implications of the Fluor's possible inability to retain DZSP's incumbent work force, and that the SSA increased DZSP's performance risk rating without explanation. *See id.* at 24-28; Hr'g Tr. 23:20 to 24:25 (Aug. 1, 2018).[6]

### A. *Increased Requirements, the Bridge Contracts, and Amendment of the Solicitation*

The court in *DZSP 21* enjoined the Navy "to perform a new evaluation of DZSP's and Fluor's proposals or to conduct an entirely new solicitation, whichever it chooses." 137 Fed. Cl. at 46-50. As noted, despite the SSA's acknowledgment that "changes . . . ha[d] occurred in the requirements" of the solicitation, she decided that "reevaluation [was] most appropriate." AR 240-29775. She based this determination on three considerations: "1) both DZSP and Fluor are completely capable of adequately meeting the Navy's requirements and have provided outstanding proposals to do so; 2) both firms have invested substantial resources in this competition; and 3) resolicitation would involve an additional lengthy period of time during which services would have to be procured on a non-competitive basis and would involve a substantial dedication of resources that have not been planned for such effort." AR 240-29775 to -29776. Although these considerations are relevant to administrative convenience and efficiency, matters as to which all involved in this procurement are sensitive, they do not address and thus cannot justify a departure from the requirements of FAR § 15.206(a). It is the FAR, not administrative convenience, that must guide the SSA's determination to reevaluate the proposals instead of amending the solicitation.

The increase in the Navy's requirements at Guam has occurred incrementally but notably over the past four years, the time during which operation services have been provided by bridge contracts. In *DZSP 21*, this court faulted the Navy for its selective consideration of the bridge contracts, which focused solely on cost elements while not addressing the effects of increased requirements and staffing. 137 Fed. Cl. at 45-46, 48-49. The Navy's apparent solution to correcting selective consideration of the bridge contracts was to disregard those contracts completely. *See* AR 240-29779; Pl.'s Mot. at 21 ("Faced with the [c]ourt's admonition, the Navy ignored the bridge contracts altogether . . . .") (emphasis omitted). That approach is not

---

[6]The date will be omitted from further citations to the transcript of the hearing conducted on August 1, 2018.

rational in the circumstances. Although the court did not explicitly state that the Navy *must* consider the bridge contracts in their entirety, a need to take into account the experience under the bridge contacts was strongly implied by both the court's citation to the transcript of the hearing held on March 9, 2018, *see DZSP 21*, 137 Fed Cl. at 46 (citing Hr'g Tr. 47:6-8 (March 9, 2018), No. 18-86C, ECF No. 50, ("[H]ow can you put blinders on and not look at the rest of the situation?")), and the court's order to complete the record with not only the portion of documents that the Navy actually considered, but with the entirety of the bridge contract documentation that was available to the Navy when it issued its 2017 evaluation, *id.* at 46, 50. Furthermore, the Navy had conceded the relevance of the bridge contracts to price realism when it used them to evaluate DZSP's cost proposal. *See* AR 192-26974 to -26975; *but see* AR 240-29779 (the SSA's April 2018 decision) (disclaiming the relevance of the bridge contracts for price realism by noting that they do not contain demographic data). Those contracts also appear to be relevant to an evaluation of DZSP's past performance under Factor A and to staffing under Factor C. *See* AR 240-29780 to -29784; *see also infra*, at 11-12. As counsel for both Fluor and then DZSP noted at the hearing, "the bridge contract data . . . [are] the canary in the coal mine." Hr'g Tr. 52:23-25, 61:20-21. An agency decision that is not based on all "of the relevant factors" is irrational. *State Farm*, 463 U.S. at 43; *see also PAI Corp.*, 614 F.3d at 1351.

The government expresses concern that requiring the Navy to consider all relevant bridge contract data "places an impossible standard on the Navy," and it claims that such a requirement "is not the legal standard," but a "novel proposition" without any legal support. Def.'s Cross-Mot. at 23. On this point, the government is simply mistaken. Considering relevant factors has been the standard for arbitrary and capricious review under the APA for decades. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (describing the arbitrary and capricious standard as "whether the decision was based on a consideration of the relevant factors"), *abrogated on other grounds as recognized by Califano v. Sanders*, 430 U.S. 99, 105 (1977). This is not to say that all bridge contracts are relevant to procurements generally. The government argues that they are not as a practical matter "because [they] are sole-sourced" and the contractors are not "incentivized to remain competitive on cost." Def.'s Cross-Mot. at 23-24. Agencies are free to take just these kinds of considerations into account as to the degree to which a particular bridge contract bears on a procurement—the standard is not that agency decisionmaking must consider all bridge contracts all the time for all purposes but that it must consider all *relevant factors*. And as explained previously, in the circumstances at hand, experience under the bridge contracts is relevant and must be taken into account.

Considering the bridge contracts as a relevant factor highlights what has already become evident: the requirements of this solicitation have changed markedly. "When . . . the [g]overnment changes its requirements or terms and conditions, the contracting officer shall amend the solicitation." FAR § 15.206(a). The government claims that the solicitation requirements have not changed, *see* Def.'s Cross-Mot. at 20-21,[7] but the SSA disagreed. The

---

[7] At the hearing on the parties' cross-motions, the government retreated somewhat from this broad contention, arguing not that no changes had occurred in the requirements for operation services but rather that the SSA had made no findings as to the materiality of the changes. Hr'g Tr. 29:1 to 31:4. The government's revised and adjusted argument is correct as a factual matter, but it is legally unavailing. In light of the terms of FAR § 15.206(a), and in recognition that the requirements of the procurement had actually changed, any conclusion that the provision of the

SSA explained her decision to reevaluate the proposals instead of amending the solicitation by explicitly "acknowledging the lengthy period that has passed since this solicitation was originally issued as well as *changes that have occurred in the requirements that were originally identified*." AR 240-29775 (emphasis added). She also implied that the bridge contracts include requirements distinct from those in the solicitation. *See* AR 240-29779 ("I did not consider DZSP's . . . bridge contracts because this procurement only is evaluating the offerors' capabilities with respect to this [solicitation's p]erformance [w]ork [s]tatement."). The court concurs with these aspects of the SSA's evaluation. The requirements and needs of the military to support installations on Guam have markedly changed, and the question becomes whether the altered requirements require the Navy to amend the solicitation.

The government claims that this is a "game of semantics" because even if the court "focus[ed] on [these] solitary sentence[s]" in the evaluation, there is no indication "that the solicitation no longer meets the Navy's needs." *See* Def.'s Cross-Mot. at 20; *see also* Hr'g Tr. 30:13-16. The government points to the Navy's use of a cost-reimbursement contract—a contract defined by uncertainty and indeterminate requirements—and inclusion in its solicitation of an evaluation of the "[o]fferor[']s approach to handling surge/contingency operations and *fluctuations in mission requirements*." *See* Def.'s Cross-Mot. at 20-21 (emphasis in original). This tangentially digressive argument by the government reaches too broadly; the provision of the FAR does not differentiate among particular types of contracts. *Cf. System Studies & Simulation, Inc.*, B-409375.2, 2014 WL 2199666, at *4 (Comp. Gen. May 12, 2014) ("[T]he fact that a requirements-type contract is being used does not relieve the agency of its fundamental obligation to conduct a competition on the basis of the most accurate or realistic estimates . . . ."). Rather, its mandate is triggered "[w]hen . . . the [g]overnment changes its requirements" and is stated in categorical terms—the government "*shall* amend the solicitation." FAR § 15.206(a) (emphasis added).[8] There is no exception in or to the rule that the court has been able to find, or to which the parties have pointed, for cost-reimbursement contracts. Though it is prudent for the Navy to choose a type of contractual arrangement that fits the pertinent setting, and the court does not fault the Navy for choosing a cost-reimbursement contract for this procurement, when there is a conflict between a duly promulgated regulation and the requirements of a solicitation, the regulation prevails. But the court does not believe that the solicitation and the regulation are in conflict. Cost-reimbursement contracts can afford the government flexibility in appropriate circumstances, but they do not obviate the requirements of Section 15.206(a).

The government's final argument against ordering the Navy to amend the solicitation is that "[t]his [c]ourt has already rejected DZSP's argument that the Navy was required to amend

---

FAR did not apply would have to be premised on an explicit, supported finding that the changes in requirements were immaterial. Otherwise, the pertinent procurement official could evade the requirements of FAR § 15.206(a) simply by omitting any findings about materiality.

[8]At the hearing, the government also retreated from this broad argument. *See* Hr'g Tr. 31:12-15 ("[W]e're not . . . arguing that in a cost-reimbursement contract there can never be a change that's significant enough to require an amendment."). The government elaborated that the SSA had chosen an option, *i.e.*, reevaluation, that the court had specifically allowed in is its prior decision. *See* Hr'g Tr. 31:24 to 32:3.

8

the solicitation," and it afforded "great deference to the professional judgment of military authorities." Def.'s Cross-Mot. at 19 (citing, *inter alia*, *DZSP 21*, 137 Fed. Cl. at 45-46). Insofar as circumstances have continued to change, the court's opinion in *DZSP 21* cannot be applied to freeze the application of law to evolving facts. The court previously deferred to the Navy's determination that its requirements had not changed despite evidence that they "arguably" had. *See DZSP 21*, 137 Fed. Cl. at 45 ("[T]he increases under the bridge contracts considered by the Navy arguably would amount to a significant change in the government's requirements, requiring an amendment of the solicitation.") (internal citations omitted). But the circumstances at military installations on Guam have continued to change and the Navy has acknowledged as much. Also, the correct application of deference is itself at issue. Should the court defer to the Navy's evaluation that states that the requirements of the solicitation have changed or its conclusion that "reevaluation is most appropriate," AR 240-29775, given the terms of FAR § 15.206(a)?

On a different ground, Fluor, but not the Navy, also resists a ruling that the solicitation be amended. Fluor claims that DZSP's changed-requirement argument is untimely because DZSP should have raised it "at the very latest . . . before the Navy's 2017 award of the contract to Fluor." Def.-Intervenor's Mem. In Support of Cross-Mot. ("Def.-Intervenor's Mem.") at 11 & n.3, ECF No. 40-1 (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007)). This argument is unavailing for a number of reasons. Until 2017, the Navy had awarded each contract to DZSP. *See DZSP 21*, 137 Fed. Cl. at 40-43. As the incumbent holder of the bridge contracts in 2017 and awardee up to that point, *see id*. at 43 & nn.4-6, DZSP would not have had an incentive, let alone standing, to challenge the solicitation prior to the Navy's award in that year. Second, after the award to Fluor in 2017, DZSP vigorously protested both the Navy's selective use of the bridge contracts in its evaluation and its failure to take into account changed circumstances. *See id*. at 45-49. And, third, after the court's decision in March of this year, the SSA explicitly took account of DZSP's contention that changed requirements obviated the solicitation. *See supra*, at 7-8 (citing AR 240-29775, -29779). Fluor's citation of *Blue & Gold* in this context is mystifying because the court's remand to the Navy for a new evaluation or new solicitation explicitly addressed the possibility that changed requirements might make a revised solicitation the preferred option for the Navy. Thus, the court will apply FAR § 15.206(a) to require the Navy to issue a revised solicitation.

### B. The SSA's Past Performance and Technical Evaluations

Although the SSA did not refer matters to the technical and cost evaluation teams, she reexamined the past performance submissions of the offerors and made adjustments in the technical and cost evaluative elements of the offerors' proposals. The non-cost factors in the 2016 and 2018 evaluations were identical—Fluor would seem to have a technical advantage because it received an "outstanding" rating under Factor D, technical approach, while DZSP received only a "good" rating, but both offerors received an overall technical rating of "outstanding." *Compare* AR 240-29777, *with* AR 108-14029. The two evaluations depart from each other on estimated cost—in 2016, DZSP had a $[***] million advantage over Fluor; in 2018, it had a $[***] million advantage—and on the final award decision. After the 2016 evaluation the Navy awarded the contract to DZSP, and after the 2018 evaluation it awarded it to Fluor. *Compare* AR 240-29777, *with* AR 108-14029, *and* 110-14056. The SSA explained this departure by stating that "[w]hile DZSP's cost is lower, . . . Fluor's superior technical proposal

9

provides advantages to the [g]overnment that are well worth the additional cost." AR 240-29800.

DZSP argues that the Navy's decision to depart from its 2016 award decision, despite DZSP's improved position under the 2018 evaluation, is arbitrary and capricious. *See* Pl.'s Mot. at 33-38. The government asserts that, "[a]lthough the overall ratings did not change, the [Navy] identified differences between the two proposals that supported [its] . . . tradeoff analysis," particularly "under [Technical] Factors B and D." Def.'s Cross-Mot. at 44. The government also acknowledges that, as to Factors A, C, and E, the proposals are "otherwise equal." *Id.* at 17 (citing AR 240-29797 to -29800). DZSP does not challenge the Navy's conclusions as to Factor B, occupational safety, but argues that the SSA's evaluation of Factors A, C, and D was flawed. Pl.'s Mot. at 28-38.

Under Factor A, the Navy evaluated the offerors' past performance. DZSP claims that the Navy arbitrarily "refused to credit DZSP for two of the five projects it identified as demonstrating relevant past performance" and failed to properly consider DZSP's performance as the incumbent. The government responds that DZSP waived its right to challenge the denial of credit for the two projects,[9] and that, even apart from waiver, DZSP was not prejudiced by the

---

[9]The government's waiver argument is based on the SSA's decision in her evaluation in 2017 not to credit DZSP for the same two past performance projects. *See* Def.'s Cross-Mot. at 36. The SSA's evaluation in 2018 revisited the same projects, AR 240-29782 to -29783, and came to the same result, Def.'s Cross-Mot. at 36. The SSA undertook her reevaluation without providing any opportunity for Fluor and DZSP to make further submissions. In the circumstances, there is no waiver.

---

When this court reviews an agency's past-performance evaluations, it gives broad deference to the agency's determination. *See Glenn Defense Marine (Asia), PTE Ltd. v. United States*, 720 F.3d 901, 910-11 (Fed. Cir. 2013); *see also CSC Gov't Sols. LLC v. United States*, 129 Fed Cl. 416, 435-36 (2016). But when those determinations are contradicted by the record, no amount of deference can save them from being overturned as arbitrary and an abuse of discretion. *See Mendoza v. Merit Sys. Protection Bd.*, 949 F.2d 391, 393-94 (Fed. Cir. 1991). The SSA did not credit DZSP with two past projects: [***] and support for [***]. AR 240-29780 to -29781. Both of these projects were performed by affiliates of DS2, "a joint venture member of DZSP." *See* AR 240-29780 to -29781; Pl.'s Mot. at 29. The [***] was originally performed by [***] before it was acquired by DS2's parent, PAE, and renamed [***]. AR 240-29780, 150b-23503. The SSA declined to give DZSP credit for the [***] because the [***] were acquired along with [***] "outside of the . . . evaluation period of May 2012 - April 2013" and because "[***] [was] not identified as being involved in the contract effort or in shared management with DZSP." AR 240-29780.

Both of the SSA's rationales are contradicted by the record. In addition to the evaluation period of May 2012 to April 2013, DZSP's proposal indicated that the performance period for the [***] runs from January 2005 to April 2020 and that [***] had been performing under the contract "for the past 8 years." AR 150b-23503. Because the record indicates that [***] continues to perform the project, it was arbitrary for the SSA to discount [***] because [***] were first achieved by a non-affiliate. Further, SSA's conclusion that "[***] [was] not identified

Factor A evaluation because it "received the highest rating possible for its past performance." Def.'s Cross-Mot. at 36-37, 40-41. The Navy's Factor A conclusion is flawed on two grounds. First, DZSP received an "excellent" rating on a "Very Relevant" project, the Guam operation services contract involved in this case, and it "was the only offeror to receive excellent customer ratings on a very relevant past performance." AR 240-29783. The SSA gave DZSP credit for that highest rating, but did not accord DZSP a higher mark than that received by Fluor for a set of less relevant projects. In that respect also, the SSA did not address the relevance of the bridge contracts to DZSP's past performance on this "Very Relevant" project. DZSP's performance under the bridge contracts is quite pertinent to how it will continue to perform when providing those same services under a new contract. And, consideration of the bridge contracts is not prohibited by the solicitation. The solicitation states that "the [g]overnment may review any other sources of information for evaluating relevant past performance," including "any . . . known sources not provided by the [o]fferor." AR 8a-329. It was therefore irrational for the Navy to not consider DZSP's work on the bridge contracts under Factor A.

Second, the government's claim that DZSP was not prejudiced because it received the highest possible rating is likewise flawed. By the government's own consideration of the rating system, one offeror's proposal can receive the same rating for a particular factor as another proposal and yet be considered superior. *See* Def.'s Cross-Mot. at 44-45; *see also Mil-Mar Century Corp. v. United States*, 111 Fed. Cl. 508, 553 (2013). For example, both DZSP and Fluor received an "outstanding" rating under Factor B, occupational safety, but the Navy determined that Fluor had a "slight advantage." *See* Def.'s Cross-Mot. at 44-45. DZSP and Fluor were considered by the SSA to be equal as to Factor A, *id.* at 17, but, again, consideration of DZSP's performance on the Guam operations contracts, including the bridge contracts, could allow DZSP to gain an advantage in Factor A. This is particularly important here because Factor A is weighted as approximately 25% of the overall evaluation—equal to that of all the technical factors combined. *See* AR 8a-343. Even a slight advantage under Factor A could be enough to counterbalance a disadvantage under a lesser-weighted technical factor. Because DZSP was the

---

as being involved in the contract effort," AR 240-29780, was arbitrary as it ignored the explicit statement in DZSP's proposal that DS2, [***], and other affiliates are "[***]." *See* AR 150b-23494.

The [***] was performed by another DS2 affiliate—[***]. AR 150b-23509. The SSA did not credit the [***] because she could not determine if [***] would have "meaningful involvement" in the contract; in her words, "DZSP introduced ambiguity" by referring to both PAE the parent and [***] as simply PAE. AR 240-29781 to -29782. This determination is likewise contradicted by the record. DZSP's proposal distinguishes between [***], the prime contractor, referenced as "PAE" and PAE the parent by following the latter with references to its parent status. *See* AR 150b-23509 (introducing work to be done by PAE the parent by stating "PAE, as the parent company"). Any seeming ambiguity is resolved by comparing the [***] past performance report with the [***] past performance report. In both, the prime contractors, [***], respectively, are referred to as "PAE" and PAE the parent is identified with reference to its parent status. *Compare* AR 150b-23504 (referring to PAE the parent under the heading "Same company division that will do the work"), *with* AR 150b-23509 (same). Revealingly, the SSA did not object to or find this same approach ambiguous in both contexts.

11

only offeror to receive an excellent rating on a very relevant project, the particular work at issue in this protest, the SSA's equivalence in ratings under factor A is not appropriate.

DZSP argues that the Navy's evaluation under Factor C, staffing and resources, was likewise arbitrary when considered against the backdrop of the 2016 evaluation. In that evaluation, the Navy determined that DZSP provided "slightly more value" than Fluor under Factor C. AR 191-26967. In the 2018 evaluation, the proposals were determined to be "essentially equal" under this factor, AR 240-29798, despite Fluor's loss of a strength for incumbency retention. *See* AR 240-29794; *DZSP 21*, 137 Fed. Cl. at 46-47. The government argues that this is not inconsistent with the Navy's 2017 evaluation that also concluded that the proposals were "essentially equal" when both Fluor and DZSP received strengths under Factor C that have since been removed. Def.'s Cross-Mot. at 46. But this argument fails to grapple with the issue at hand. The evaluation's analysis in 2017 of Factor C was determined to be arbitrary and was set aside. *See DZSP 21*, 137 Fed. Cl. at 50. The strength that DZSP lost in the 2018 evaluation had not been assigned to it in the 2016 evaluation. So vis-à-vis the 2016 evaluation, Fluor has a relatively weaker proposal, yet in 2018 it was determined to be relatively stronger. As this court said in *DZSP 21*, "the Navy [is] not bound by its 2016 evaluation, but . . . a reversal of that evaluation [must] . . . be accompanied by a rational explanation in fact." *Id*. at 48 (citing *State Farm*, 463 U.S. at 41-42). The Navy has provided no such explanation here.

Further, DZSP argues that the Factor C evaluation was arbitrary because "the SSA gave no consideration whatsoever to the substantial performance risk and likelihood of disruption that would result from Fluor's inability to retain the incumbent workforce." Pl.'s Mot. at 25 (internal emphasis omitted). Although the SSA removed the strength that Fluor had been assessed for incumbent retention, following this court's opinion in *DZSP 21*, DZSP claims that the SSA also needed to consider the effect of Fluor's potential inability to retain incumbents on its overall approach to Factor C. *See id*. The government counters that the Navy need not "determine whether Fluor w[ould], in fact, achieve the proposed retention rates identified in its proposal" and claims that "DZSP's true argument is that the SSA did not ascribe the same significance to incumbent retention as DZSP apparently believes is appropriate." Def.'s Cross-Mot. at 31, 34. But DZSP cites Fluor's statements, not its own, about the importance of incumbent retention to Fluor's approach to Factor C. *See* Pl.'s Mot at 26 (citing AR 237a). Fluor described retention of incumbents as "[***]" of various portions of its proposal. *See, e.g*., AR 237a-28664; Hr'g Tr. 18-5-8. The SSA was required to fully "account for the distinct possibility that Fluor could not meet its goal of hiring incumbents and would have to rely on securing less experienced exempt employees," both as it affected the strength previously assigned and Fluor's overall performance under Factor C. *See DZSP 21*, 137 Fed. Cl. at 47. Because the SSA did not fully consider the impact of Fluor's potential inability to meet its retention goals, the SSA failed to consider a factor relevant to its evaluation.[10]

---

[10]The government and Fluor each included extra-record materials in its briefs that addressed Fluor's efforts in taking transitional steps to recruit DZSP's employees, as it prepares to undertake the contract awarded to it. *See* Def.'s Cross-Mot. Ex. A, ECF No. 39-1; Def.-Intervenor's Mem. Ex. 1. DZSP has moved to strike those "materials in their entirety because . . . they are not part of the Administrative Record" and the SSA "did not consider them." Pl.'s Mot. to Strike at 2, ECF No. 41. For good cause shown, DZSP's motion is GRANTED. Those extra-record materials shall be stricken.

DZSP raises a final argument against the Navy's departure from the 2016 evaluation, specifically that the Navy increased DZSP's performance risk under Factor D, technical approach, from "low" to "low to moderate" without any explanation in the record. Pl.'s Mot. at 32-33. As noted *supra*, at 9, Fluor received a better rating than DZSP for Factor D, so Fluor had an overall advantage over DZSP regarding this factor. The change in performance risk, however, raises a different issue. The government does not dispute that the change occurred or that the change is unsupported by the record; it argues only that "there is no evidence that" the change "had any effect on the outcome of the evaluation." Def.'s Cross-Mot. at 41. Apart from whether discounting the Navy's unexplained alteration in the risk rating would itself change the outcome in this case, the government is wrong about prejudice. "[P]rejudice cannot be assessed in a vacuum, but must be considered in light of all of the changes the Navy would have to consider upon reevaluation." *DZSP 21*, 137 Fed. Cl. at 47. As the court has noted, a mistake as to one of the "discriminators" in a procurement can be prejudicial in context. *Id.* (quoting *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 212 (2004), *aff'd*, 389 F.3d 1219). When considered under this standard, the unexplained change to DZSP's performance risk was prejudicial.[11]

### C. Equitable Relief

DZSP seeks a declaration setting aside the contract award to Fluor and a permanent injunction requiring that the Navy amend the solicitation in light of its changed requirements. In a bid protest, the court may award relief that it considers proper, including declaratory and injunctive relief. 28 U.S.C. § 1491(b)(2). "The determination of whether injunctive relief is appropriate is left to the court's 'equitable discretion.'" *Angelica Textile Servs., Inc. v. United States*, 95 Fed. Cl. 208, 223 (2010) (citing *PGBA*, 389 F.3d at 1225-26). "In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA*, 389 F.3d at 1228-29 (internal citations omitted).

For the reasons explained above, DZSP has prevailed on the merits.

---

[11] At the hearing, Fluor's counsel offered a possible explanation for the SSA's change:

> "Factor D looks at what you're proposing to do on this contract with this solicitation in the future. . . . [T]hat's why there's no inconsistency between . . . DZSP . . . getting an outstanding [rating on past performance] . . . and . . . being assessed with a . . . low to moderate risk rating for their technical approach."

Hr'g Tr. 58:10-16. The SSA, however, offered no rationale for her change in the risk rating, let alone that put forward by Fluor's counsel.

13

DZSP claims that it will be irreparably harmed if the court does not grant injunctive relief because it would "be deprived of the opportunity to compete on a level playing field for a contract worth over $400 million." Pl.'s Mot. at 39. The "[d]enial of the opportunity to compete [fairly] for a contract can constitute irreparable harm." *Miles Constr., LLC v. United States*, 108 Fed. Cl. 792, 806 (2013) (citing *Electronic On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 169 (2012); *NetStar-1 Gov't Consulting, Inc. v. United States*, 101 Fed. Cl. 511, 530 (2011), *aff'd*, 473 Fed. Appx. 902 (Fed. Cir. 2012)); *see also United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998) ("[T]he opportunity to compete for a contract and secure any resulting profits has been recognized to constitute significant harm."). While it is true that "mere allegation[s] that a party will be deprived of a chance to compete fairly [do not] meet the standard for irreparable harm," *see* Def.'s Cross-Mot. at 49 (citing *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001)), DZSP has provided far more than mere allegations. Because the Navy acted arbitrarily when evaluating DZSP's and Fluor's proposals and in violation of FAR § 15.206(a) by not amending the solicitation, DZSP was deprived of an opportunity to compete fairly for the contract. Thus, the court finds that DZSP will suffer irreparable harm if injunctive relief is not provided.

DZSP claims that the balance of the harms favors injunctive relief because, "if enjoined, the Navy will continue to receive . . . services . . . through DZSP's bridge contract," thereby receiving little to no harm. Pl.'s Mot. at 39. The government asks the court to "reject DZSP's assertion" because it "completely ignores any harm to Fluor" and "the continued use of bridge contracts is not conducive to cost savings." Def.'s Cross-Mot. at 49. An injunction would mitigate harm to Fluor because it would prevent Fluor from expending resources on a transition that may never occur. And, although single-sourced bridge contracts may cost the government more than a competitive contract would, the marginal cost to the government does not outweigh the potential cost of long-term harm from allowing a flawed contractual award to take effect. Further, the government has already agreed to an extension of DZSP's bridge contract until February 2019 and so will not incur any additional costs until after that date. *See* Pl.'s Mot. at 39.

Finally, public interest favors a grant of injunctive relief because the public "has a strong interest in preserving the integrity of the procurement process." *Angelica Textile Servs.*, 95 Fed. Cl. at 223 (citing *DGR Assocs., Inc. v. United States*, 94 Fed. Cl. 189, 211 (2010); *Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005)). That interest would be undermined if the court were to deny injunctive relief and let the Navy's arbitrary and unlawful actions in this procurement stand. Injunctive relief is therefore warranted.

## CONCLUSION

For the reasons stated above, DZSP's motion for judgment on the administrative record is GRANTED, and the government's and Fluor's cross-motions for judgment on the administrative record are DENIED. The Navy's contractual award to Fluor is set aside, and the Navy is enjoined to amend its solicitation. The clerk is directed to enter judgment in accord with this disposition.[12]

---

[12]As noted *supra*, at 12-13 n.10, DZSP's motion to strike extra-record materials submitted by the government and Fluor is GRANTED.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow  
Charles F. Lettow  
Senior Judge